GILMAN AND COWDREY v. THE D. M. V. R. Co. ET AL.

**Mortgage:** TRUSTEE: SALE. When a mortgage upon a railway and its lands stipulated, *inter alia*, that the proceeds of the sale of the mortgaged lands were to constitute a sinking fund for the discharge of the bonds secured by the mortgage; that the holders of any mortgage bonds should have the privilege of purchasing lands with the same at not less than a fixed minimum price; that the trustees of the bondholders should be required to cancel the bonds so received, and that, "for services in selling and conveying the lands herein described, and applying the proceeds to the sinking fund," the trustees were to receive "two per centum on the par amount of the bonds canceled:" *Held*, that a sale of lands and payment in bonds were equivalent to a sale for cash, and that the trustees were entitled to two per cent on the par value of bonds received in exchange for lands and canceled.

*Appeal from Polk Circuit Court.*

FRIDAY, JUNE 18.

ON the 9th day of July, 1872, the plaintiffs, trustees of the holders of the then outstanding mortgage bonds of the Des Moines Valley Railroad Company, commenced their action to foreclose a mortgage of said company. This mortgage is a first mortgage upon about 465,000 acres of land, and upon the

railroad and its equipments, extending from Des Moines to Fort Dodge, and is a second mortgage on the railroad and its equipments, extending from Keokuk to Des Moines, and is executed to the plaintiffs in trust to secure the payment of 4690 one thousand dollar bonds of said railway company, dated October 1st, 1868, due October 1st, 1898, with interest at the rate of eight per cent. payable semi-annually.

On the 9th of September, 1873, the court found that there was due the plaintiffs on the unpaid bonds of said railway company the sum of $2,907,293.33, and decreed a foreclosure of the mortgage.

The decree contains the following recital: " That there is due to W. S. Gilman and N. A. Cowdrey, for their services as trustees, in accordance with the terms of said mortgage, for selling and conveying lands therein described, the sum of two per cent. on the par amount of the bonds canceled by such sales, exclusive of all cash disbursements, and it is ordered that prior to the sale of the lands mentioned in schedule C herein ordered to be sold, the said W. S. Gilman and N. A. Cowdrey do file an account showing the lands sold and conveyed by them under the terms of said mortgage, the particulars and amounts of the bonds so by them canceled, and the amount of commission to which they are entitled thereupon. Such accounts to abide the further order of this court."

Pursuant to this order of court, the plaintiffs, on the 2d day of September, 1874, filed their account, showing that they had canceled bonds of the company to the amount of $2,769,200, of which the amount of $107,000 was canceled by the payment of cash, and the balance by the conveyance of bonds of the company, included in the mortgage. Plaintiffs also filed a supplemental report, showing that since the rendition of the decree they had canceled bonds of the company, to the amount of $103,760.

On these two sums, aggregating $2,872,960, plaintiff's claim, under the terms of the mortgage, a commission of two per cent. for their services, amounting to $57,459.20. Certain of the bond holders appeared and objected to this portion of the account as follows:

1.  "That the commissions, charged by the trustees, of two per cent. on $2,769,200, are enormous, and that the said charge should be confined to commissions of two per cent. on $107,000 of bonds purchased."

2.  "That the charge for commissions of two per cent. on $103,760, as shown in the supplemental account of August 5th 1874, and also on any other bonds canceled on exchange for lands, since the decree in this cause, is erroneous, as by the terms of the trust deed a charge of one-fifth of one per cent. upon the bonds outstanding at the time of the decree is the true rate of compensation."

The court sustained these objections, but, inadvertently as it seems, denied the commission upon the entire $2,769,200, mentioned in the first exception, the right to commission on $107,000 of that sum being admitted. The plaintiffs appeal.

*Gatch & Wright*, for appellants.

*Nourse & Kauffman*, for appellees.

DAY, J.—The question involved in the case is, whether the plaintiffs are entitled to a commission of two per cent. upon the bonds, amounting to $2,666,200, canceled by a conveyance of lands before the decree of foreclosure, and upon those amounting to $103,760 canceled after the decree of foreclosure.

The mortgage, upon a construction of which the rights of the respective parties depend, contains, amongst other things, the following provisions:

1.  The bonds secured by it, a copy whereof is incorporated into, and made a part of the mortgage, provide that the holder is entitled to the security of the mortgage upon the road and equipments, and about 465,000 acres of land, the proceeds of the sales of which land are to be a sinking fund, for the ultimate payment of the principal and interest of said bonds.

2.  It is stipulated that the railroad company, with the written consent of the trustees, may sell any of the mortgaged lands not needed for the use of the company, and that whenever the proceeds of the sales amount to the sum of one thou-

sand dollars, they shall be applied to the purchase, and cancellation of one or more of said mortgaged bonds, or of some bonds which are a prior lien upon the mortgaged premises, and that the trustees shall then release the premises sold from the mortgage.

3. It is agreed that the railroad company shall with all reasonable dispatch make and deliver to the trustees true and accurate lists, schedules and maps of the lands included in the mortgage, showing the minimum price at which the respective pieces may be conveyed, which shall be approved by the Board of Directors, and also approved and signed by the trustees, and that the company may, with the consent in writing of the trustees at any time, not oftener than once a year, affix a new minimum price to each parcel unsold.

4. That when said company shall certify to the trustees that it has sold or contracted for the sale of any of said lands, at a sum not less than the minimum price fixed, the trustees shall join with the company in executing a deed to the purchaser, and shall deliver such deed to him, upon receiving the whole price of such parcel, either in cash or in the mortgage bonds, secured by the mortgage at the par value thereof, or partly in cash, and partly in said bonds, and that the lands so conveyed shall be released from the lien of the mortgage; and that if the lands be sold on a credit, the deed shall be delivered upon the receipt of the portion to be paid in cash, together with a mortgage upon the land sold, securing a bond executed for the remainder of the purchase price.

"5. That the consideration money on any of such sales of land may be paid, either in whole or in part, by delivering to said trustees, to be canceled, one or more of the bonds secured by the mortgage at their par value; and payments upon any bonds or mortgages received by the trustees, either for principal or interest, may be made by delivering to them to be canceled one or more of the bonds secured by the mortgage, at their par value."

"6. That the holders of any of the bonds or past due coupons thereof, secured by this mortgage, shall have the right and privilege of purchasing any of said lands not required by

the company for the necessary or convenient operation of the railroad at the then minimum price fixed by said company, and approved by said trustees, and to pay therefor in said bonds, or coupons secured by this mortgage at their then par value."

"7.  That for the further security and ultimate redemption of the bonds secured by this mortgage, all moneys, and bonds, and mortgages, and the proceeds and avails of all such bonds and mortgages, which may be received by said trustees * * * as proceeds of the aforesaid lands, or otherwise, under the trust herein declared, shall constitute a sinking fund for the redemption and payment of the bonds issued by said company and secured by this mortgage."

8.  That the trustees shall immediately, upon the payment of any money to them, deposit the amount in the United States Trust Company of the City of New York; and that whenever there shall be any money on deposit the trustees may in their discretion apply it to the purchase or redemption of so many of the mortgage bonds as the money may be adequate to redeem at their market value in New York City, not exceeding one hundred and twenty per centum; and that when the money so on deposit shall amount to the sum of $20,000 it shall be the imperative duty of the trustees to apply it to the redemption of so many of the mortgage bonds as the sinking fund is adequate to pay.

But if the trustees cannot buy the bonds at one hundred and twenty per cent. they shall, so often as they have $50,000, designate by lot so many of the bonds as they have money to pay, and that, after notice of such designation, the interest on such bonds shall cease.

"9.  That the said trustees shall and will cancel and discharge each and everyone of the bonds secured by this mortgage, with all the interest warrants annexed thereto or accompanying the same which they shall pay, purchase or redeem as aforesaid, or which they may receive in any payment for land as aforesaid; and that they will make, or cause to be made upon each bond a brief note or memorandum, stating how, when, and for what consideration, the same was canceled, from

whom the said mortgage bond was received, and in such manner and form. as will enable the said company to trace the transaction.

The said trustees shall immediately return so many bonds as are paid by them to the company canceled, and both the company and said trustees shall keep a proper registry and account of all the bonds paid by them or designated to be paid as aforesaid, which registry or account shall be open for the examination and inspection of any parties in interest, at all reasonable times, and the number and amount of said bonds thus canceled shall be reported by said company to the stockholders of said ·company in each annual statement of the company made to the stockholders."

10. In case the company shall for six months make default in the payment of the semi-annual interest, the whole principal of all of said mortgage bonds shall, at the option of a majority in interest of the bondholders, become due and payable, and the trustees are authorized to take possession of all the property and dispose of it at auction.

11. In case of a sale of the mortgaged premises under decree of court, the trustees are authorized to purchase the premises for the use of the holders of the outstanding bonds, and no bondholder shall have a claim to the premises or proceeds thereof, except for his *pro rata* share of the proceeds, to be represented in a new company or corporation to be formed for the benefit of the holders of such bonds.

" 12. And it is further mutually agreed by all parties hereto, that said trustees, their or his successor or successors, survivor or survivors, shall receive from said company for his or their services in the acceptance of this trust, and the signing and delivery of the bonds issued hereunder, each of them one bond of $1,000. And for any further services hereunder, he or they shall receive as follows, viz: For services under any foreclosure proceedings to foreclose this mortgage, the sum of one-fifth of one per centum on the par amount of the bonds to be secured by this mortgage, then outstanding, exclusive of all cash disbursements. For services in selling and conveying the lands herein described, and applying the pro-

ceeds to the sinking fund as herein provided, the sum of two per centum on the par amount of the bonds canceled in that manner, exclusive of all cash disbursements. The above commission to be in full payment of both trustees, and to be equally divided between them."

From the foregoing synopsis of so much of the mortgage as seems material to an understanding and proper considera-

1. MORTGAGE: trustee: sale. tion of the questions involved, it appears that the proceeds of the lands mortgaged were pledged as a sinking fund for the discharge of the bonds secured by the mortgage.

The railroad company retained the right to sell the lands at less than the minimum price approved by the board of directors and the trustees, and upon the payment of this price to the trustees they were to execute conveyances to the purchasers. This price might be paid in the mortgage bonds of the company. The holders of any of the mortgage bonds had the privilege of purchasing any of the mortgaged lands, not needed by the company for the operation of its road, and of paying for them in the mortgage bonds at their par value. All moneys and bonds and mortgages and the proceeds and avails thereof—received by the trustees as proceeds of the lands, constituted a sinking fund for the redemption and payment of the bonds secured by the mortgage.

The trustees were required to cancel and discharge every mortgage bond which they might receive in payment for any of the lands sold.

Now, it is evident that the parties to this mortgage must have understood that when lands were sold and paid for in the mortgage bonds at their par value, and the bonds were canceled and discharged, the proceeds of the sales became and were applied to the sinking fund for the payment of the bonds. Otherwise, after the railroad company had, in the mortgage, pledged the proceeds of the lands to the creation of such fund, it deliberately incorporated into the same instrument, provisions whereby the proceeds might be diverted from such fund.

The transaction whereby the lands are devoted to the discharge of the bonds is not regarded in the mortgage, as a

mere exchange of lands for the bonds. Throughout, the mortgage uses the words sale, price, purchase and pay. When the company certifies that it has *sold* land, the trustees shall convey upon receiving the price, either in cash or in the mortgage bonds at their par value, or partly in each, and the holders of bonds may *purchase* lands and pay therefor in bonds. It is evident that a sale of lands, and payment therefor in the bonds of the company, are treated in the mortgage just as a sale for cash.

Now the mortgage provides that the trustees shall have for services in selling and conveying the lands, and applying the proceeds to the sinking fund, two per centum on the par amount of the bonds cancelled in that manner.

It is not claimed that the *contract* of sale must actually be made by the trustees, for it is conceded that if the conveyance is made by the trustees, and the price paid to them in cash and bonds afterward purchased therewith, that the trustees are entitled to the commission of two per cent. on the par value of the bonds purchased. The test of their right to compensation is made to depend upon the question whether the price is paid in cash or in the mortgage bonds.

We think we have shown that the mortgage recognizes no distinction between the modes of payment. When payment is made in bonds, and the bonds are canceled, the proceeds of the lands so paid for are applied to the sinking fund.

The trustees for their services resulting in such application, are entitled to two per cent. on the par value of the bonds in that manner canceled.

Appellee contends that it is for their services and responsibility connected with the care of the money received, that the trustees are to be paid. But if this is so, why was their compensation not regulated by the amount paid for the bonds, rather than by their par value. The trustees' account shows that some of the bonds were bought at 60 per cent of their par value, and that 75 per cent of their par value was the highest price paid for any. The amount of money received was much less than the par value of the bonds purchased, and there can be no propriety in regulating the commissions by the par

value of bonds redeemed, if it was intended to compensate the trustees for their responsibility on account of handling the money.

It is claimed that for the bonds, canceled since the rendition of the decree, amounting to $103,760, the trustees have been fully paid in the allowance of one-fifth of one per cent thereon. It will be noticed that the mortgage provides this compensation for services rendered under a foreclosure proceeding. The services connected with the cancellation of the bonds are entirely distinct and are specifically provided for in the mortgage.

We feel quite clear that the trustees, under the terms of the mortgage, are entitled to two per cent. commission on the par value of the bonds conceled.

REVERSED.